IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:19-CR-356 |
| | : | |
| v. | : | |
| | : | |
| BERNARD JOHNSON | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to suppress evidence filed by Defendant Bernard Johnson ("Johnson"). (Doc. 80.) Johnson seeks to suppress evidence seized from his apartment and vehicle. After reviewing the briefs and considering the evidence presented during a hearing on the portion of the motion addressing the evidence seized from the apartment, the court concludes that the officers were justified in conducting both searches of Johnson's apartment without a warrant under the exigency exception to the Fourth Amendment. Accordingly, for the reasons that follow, the court will deny the motion to suppress evidence found in Johnson's apartment. Because the court concludes that Johnson has made a substantial preliminary showing that the affidavit supporting the vehicle search warrant may have contained a false statement, the court will convene a *Franks* hearing to address the search of Johnson's vehicle.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On December 11, 2019, the United States filed a seven-count indictment against Johnson regarding two separate incidents. (Doc. 1.) Counts 1 through 4 relate to the incident addressed in the instant suppression motion that occurred on or about November 23, 2017, in Cumberland County, Pennsylvania.[2] Johnson was indicted with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 1), possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 2), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 3), and possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) (Count 4). (Doc. 1.)

Officer Timothy Rine ("Officer Rine"),[3] a patrol officer with the West Shore Regional Police Department, was working uniform patrol on November 23, 2017. At approximately 1:56 a.m., Officer Rine was dispatched by Cumberland County Control to 920 North Front Street, Apartment 10, Wormleysburg, Pennsylvania,

---

[1] The facts detailed in this opinion are based on the record established during the March 23, 2022 evidentiary hearing and the motion to suppress briefing.

[2] Counts 5 through 7 relate to an incident in Dauphin County, Pennsylvania, that occurred on or about August 17, 2018. (Doc. 1, pp. 4–6.) On July 15, 2021, the court granted Johnson's unopposed motion to sever Counts 1 through 4 from 5 through 7 for trial. (Docs. 45, 46.) Thus, the court is only addressing the activity involved in Counts 1 through 4 at this time.

[3] Officer Rine was the only witness during the evidentiary hearing on March 23, 2022. The court relies primarily on Officer Rine's testimony and his body camera footage introduced as Defense Exhibit 1.

for what was described as an active burglary. Joshua Melick ("Melick"), a neighbor who lived in Apartment 9, called 911 and reported to Cumberland County Control that he heard glass breaking, and noises that sounded like someone was inside Apartment 10 and possibly someone leaving Apartment 10.

Once Officer Rine received the dispatch from Cumberland County Control, he arrived at 920 North Front Street in under five minutes. Officer Brandon Stolley ("Officer Stolley") of the West Shore Regional Police Department was already at the apartment building when Officer Rine arrived. Upon arrival, Officer Rine parked his vehicle, activated his body camera, and went up the outdoor steps to the second floor of the apartment building. Officer Rine continued towards the end of the outdoor porch to Apartment 10, which is the last apartment at the far end of the porch. Melick was outside his apartment and Officer Stolley was outside Apartment 10.

As Officer Rine walked up to Melick, he asked if he knew who lived in Apartment 10. Melick did not know the names of residents but identified one resident as a "black guy" who he met once or twice and stated that he never met the "girl." He further stated that he heard the residents yell before and called 911 on one other occasion when they were "screaming and yelling" but "nothing like this" before. Melick was unsure whether anyone was home and was also unsure about the type of vehicle driven by the residents of Apartment 10.

While Officer Rine was speaking with Melick, Officer Stolley shined his flashlight into the window of Apartment 10. Officer Rine observed that the window appeared to be broken from the outside into the apartment, but a venetian blind was down on the inside of the window frame blocking the officers' view into the interior of the apartment. Officer Stolley moved the blind aside to look inside Apartment 10 with his flashlight. The lights were turned off inside the apartment. Officer Stolley crossed the threshold of the window frame with his arm and head leaning inside the apartment with the blind moved aside. Officer Stolley advised Officer Rine that a scale and drug paraphernalia were visible inside the apartment and that it "stinks like weed."

At this point, Officer Rine stopped talking to Melick and joined Officer Stolley near Apartment 10. Officer Rine asked whether "there is anybody in there," to which Officer Stolley responded, "it doesn't look like it." The officers exchanged additional comments regarding the strong odor emanating from the apartment as the officers moved towards the door of Apartment 10. Officer Stolley observed that "someone tried to jimmy this door," and noted that there were pieces from the door on the ground. Officer Rine observed that the trim around the lock and doorknob was also damaged. Officer Stolley quietly questioned whether this could be a "drug robbery," to which Officer Rine responded in the affirmative. Officer Stolley further observed that there is "a big ass scale in there."

Officers Rine and Stolley then discussed whether they could enter the apartment. Officer Stolley suggested that they could enter just for observing the scale or to "clear" the apartment. Officer Rine agreed and added that there "could be someone in there, someone hurt." Officer Stolley opened the door, which was unlocked, and the officers entered the apartment with their duty weapons and flashlights up. It took approximately three minutes and forty-five seconds from the time Officer Rine arrived at 920 North Front Street until Officers Rine and Stolley entered Apartment 10.

Upon entering Apartment 10, the officers walked through the living room, which is the area Officer Stolley could see from looking inside the window, and announced themselves once they began searching the other areas of the apartment. Officer Rine opened a closet in the living room area, commented on what appeared to be pounds of marijuana in the closet, and then continued in the apartment search while announcing himself as "West Shore Regional Police." Officers Rine and Stolley completed the search of the apartment without locating any resident, victim, or suspect.

After completing the search of the apartment for occupants, Officers Rine and Stolley continued to look around the interior of the apartment particularly in the kitchen and living room, identifying items like gun magazines, rubber bands, and pills. The officers also reviewed the personal papers in Apartment 10,

5

identifying Johnson's name from a paystub for the Law Offices of Roy Galloway, LLC.  By this time, another officer had arrived on scene to assist.  The officers continued to look around the apartment without seizing any evidence for approximately four to five more minutes according to the body camera footage.  Officer Rine then left Apartment 10 to obtain a search warrant.

Officer Rine applied for a search warrant, which was issued that morning.  (*See* Doc. 85-1.)  A "large amount of illegal drugs," cash, and two stolen handguns were seized following execution of the search warrant.  (Gov't Pretrial Ex. 1.)  Subsequently, Officer Rine, relying on statements from another officer who allegedly observed a stock rifle through the window of Johnson's vehicle, a Saab 9-3, obtained and executed a search warrant on the vehicle.  (*See id.*)

In advance of trial, Johnson filed numerous motions, including the instant motion to suppress, on February 28, 2022.  (Doc. 80.)  Johnson filed a brief in support on March 7, 2022, and the Government's opposition brief was filed on March 10, 2022.  (Docs. 84, 85.)  A reply brief was timely filed on March 18, 2022, and the court held an evidentiary hearing only on the suppression of evidence found in Johnson's apartment on March 23, 2022.  (Doc. 91.)  Thus, this motion is ripe for review.

## DISCUSSION

In his motion, Johnson argues that the evidence obtained from the search of his apartment and Saab 9-3 should be suppressed. Because the issues surrounding the search warrant for the Saab 9-3 require a *Franks* hearing based on Johnson's satisfaction of his burden of making a substantial preliminary showing, the court only resolves the portion of the motion that challenges the warrantless search of Johnson's apartment in this opinion.

### A. Challenge to the Seizure of Evidence from Johnson's Apartment

Johnson argues that Officer Stolley's initial entry through his apartment window violated his Fourth Amendment rights because the West Shore Regional Police Department did not have a warrant, nor did exigent circumstances justify moving the blind aside and entering through the window. (Doc. 84, pp. 9–10.)[4] He asserts that only once the scale and drug paraphernalia were viewed by moving the blind aside and shining a flashlight into the apartment did the officers articulate exigent circumstances to further search the apartment. (*Id.* at 10.) Johnson further argues that it is "disingenuous to suggest" that the officers believed someone was inside the apartment based on the conversation between Officers Rine and Stolley. (Doc. 91, pp. 6–8.) Thus, Johnson contends that the search was "pretextual" and

---

[4] For ease of reference, the court uses the page numbers from the CM/ECF header.

violated his Fourth Amendment rights requiring all evidence seized following the execution of the search warrant to be suppressed. (Doc. 84, pp. 10–11.)

The United States argues that Officers Rine and Stolley were appropriately responding to an active burglary call by entering Apartment 10 initially through the window and then through the front door. (Doc. 85, p. 11.) According to the United States, the officers needed to "secure the premises" for their safety and the safety of others which is why they entered Apartment 10 with their weapons drawn and checked each room. (*Id.*) The United States argues that Melick's 911 call reporting an active burglary and the signs of a burglary including a broken window and damage to the door provided sufficient probable cause and exigent circumstances to justify the entry into Johnson's apartment without a warrant. (*Id.* at 11–12.) Further, because no evidence was seized until after a warrant was obtained, the motion to suppress should be denied. (*Id.* at 10–14.)

Johnson bears the initial burden of establishing a basis for his motion to suppress. *United States v. Benoit*, 730 F.3d 280, 288 (3d Cir. 2013) (citation omitted). This burden has been satisfied, as the parties do not dispute that Johnson resided at 920 North Front Street, Apartment 10, nor that there was a warrantless entry into Johnson's apartment. Because this initial burden has been met, the United States must establish by a preponderance of the evidence that the search in question was reasonable and within the bounds of the Fourth Amendment. *Id.*

8

(citations omitted); *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). Accordingly, the question before the court is whether Officers Rine and Stolley were justified in the warrantless entry into Johnson's apartment under the Fourth Amendment.

The Fourth Amendment provides individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable," unless the home occupants consent to a search or probable cause and exigent circumstances exist to justify the warrantless intrusion. *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotations omitted); *United States v. Coles*, 437 F.3d 361, 365–66 (3d Cir. 2006) (citations omitted). Probable cause exists if the evidence available to the officers "would 'warrant a man of reasonable caution in the belief' that a felony has been committed." *Wong Sun v. United States*, 371 U.S. 471, 413 (1963); *see also United States v. Morgan*, No. 00-cr-375, 2000 WL 1622748 (E.D. Pa. Oct. 20, 2000). Exigent circumstances include, but are not limited to, the hot pursuit of a fleeing suspect, an imminent risk that evidence may be removed or destroyed, and danger to the lives of officers or others. *Coles*, 437 F.3d at 366 (citations omitted).

In these specific and limited situations, "the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." *Id.* (citing *Warden v. Hayden*, 387 U.S. 294, 298–99 (1967)).  To determine whether there were exigent circumstances for a warrantless search, the court must review "the totality of the circumstances, including 'the facts and reasonably discoverable information available to the officers at the time they took their actions.'" *United States v. Parris*, 229 F. App'x 130, 134 (3d Cir. 2007) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003)).  Whether exigent circumstances exist in a given case is a finding of fact. *Id*. (citing *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993)).

At the outset, based on the evidence presented at the hearing, the court finds that there were two warrantless entries into Johnson's apartment—Officer Stolley's entry through the broken window and Officers Rine and Stolley's entry through the apartment door.  Reviewing the facts surrounding the entry to the broken window first, the court finds that probable cause and exigent circumstances existed to cross the threshold into the apartment through the broken window and move the blind aside to shine a flashlight into the interior of the apartment.  At the time Officer Stolley moved the blind and looked into Johnson's apartment through the window with the aid of a flashlight, Officers Rine and Stolley knew there was a

report of a possible burglary, saw Apartment 10's window broken from the outside as evidence of a possible burglary, and were unsure if any occupants were in the apartment based on the report of the neighbor.  Based on the totality of circumstances, there was probable cause to believe that a felony burglary was committed and an exigent circumstance existed based on the potential danger to any occupants inside the apartment.  As a result, Officer Stolley's initial warrantless entry through the broken window was justified.

Courts within the Third Circuit and elsewhere have held that probable cause and exigent circumstances existed when an officer reasonably believed, under the circumstances, that a burglary was in progress.  *See, e.g.*, *United States v. Sculco*, 82 F. Supp. 2d 410, 417 (E.D. Pa. 2000) (finding that officers' belief that a burglary was in progress supported the warrantless entry into a residence under the exigent circumstances exception); *Morgan*, 2000 WL 1622748 at *4–6 (collecting cases and holding that exigent circumstances justified a warrantless search of the defendant's apartment because officers believed a burglary was in progress); *Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987) (concluding that a call reporting a burglary in progress justified the warrantless entry via exigent circumstances); *United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir. 1982) (holding that an apparent burglary in progress justified a warrantless entry into the residence), *rev'd on other grounds*, 710 F.2d 431 (1983) (en banc).  At the point of

the window entry, Officers Rine and Stolley only had information regarding a potential burglary in progress. Although the officers ultimately discovered that there were no occupants in the apartment, the court has no basis to doubt Officer Stolley's concern for possible injured occupants in the apartment when he reached through the broken window and moved the blind aside to look inside the apartment with the aid of a flashlight.

The court finds that probable cause and exigent circumstances also existed to justify Officers Rine and Stolley entering Johnson's apartment via the front door to search the remainder of the apartment without a warrant. The initial entry through the broken window only allowed Officer Stolley to view the living room area of Apartment 10. The officers had no way of knowing, without entering through the front door, whether there was an injured occupant or a burglary suspect inside another area of the apartment that was not visible through the broken window. For the same reason that probable cause and exigency justified the entry through the broken window, based on "the facts and reasonable discoverable information" at that time, the totality of circumstances demonstrated probable cause and exigency sufficient to justify the warrantless entry through the unlocked door. *See Parris*, 229 F. App'x at 134.

In reaching these conclusions, the court credits Johnson's contention that Officers Rine and Stolley developed a second purpose for entering the apartment

12

through the door. The conversation between Officers Rine and Stolley after the window entry but before the door entry establishes that the officers were motived to search the entire interior of the apartment in part by their suspicion of a "drug burglary." It is reasonable to conclude upon viewing the body camera footage that the officers' motivation to search the apartment included this second purpose after they observed items indicative of drug trafficking activities. However, the court has determined that the existence of probable cause and exigency surrounding the burglary was not eliminated when the officers developed the additional purpose. The court must examine the totality of the circumstances, not merely the obvious interest shown by the officers in the drug trafficking evidence. Their interest alone is not sufficient to establish that the search of the apartment was pretextual under the circumstances present in this case.

Johnson has only challenged the entries into his apartment. Because Johnson has not otherwise challenged the seizure of evidence following the execution of the search warrant, the motion to suppress the evidence located in the apartment will be denied.

**B. Challenge to the Seizure of Evidence from Johnson's Vehicle**

Johnson's motion also challenges the truthfulness of factual statements made in the affidavit of probable cause in support of the vehicle search warrant. (Doc.

80.) The court construes this as a challenge pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

The Supreme Court set forth the procedure in *Franks* by which a defendant may overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid. As a threshold matter, the defendant must make a "substantial preliminary showing" that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause. *Id.* If that threshold showing is made, then the defendant must ultimately prove by a preponderance of the evidence at the *Franks* hearing that: (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks*, 438 U.S. at 171–72).

Here, Johnson has satisfied the requirement of making a substantial preliminary showing because he argues that the statement made by an officer that a portion of a firearm was visible in the trunk area of Johnson's vehicle was false because it was not possible to see inside the Saab 9-3 given the tinting on the windows. Johnson bases this assertion on his knowledge of the tinting of his

14

vehicle's windows and photographs of the vehicle. This statement was material to the finding of probable cause. As a result, the court will hold a *Franks* hearing to enable the court to assess this challenge.

## CONCLUSION

For the reasons stated herein, the court will deny the motion to suppress evidence based on the warrantless entry into Johnson's apartment and schedule a *Franks* hearing regarding the evidence seized from Johnson's vehicle. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 27, 2022