IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:19-CR-356 |
| | : | |
| v. | : | |
| | : | |
| BERNARD JOHNSON | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Defendant Bernard Johnson ("Johnson") is charged in a seven-count indictment with various offenses, including possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Johnson moves to dismiss counts 4 and 7[1] based on the argument that Section 922(g)(1) violates the Second Amendment to the United States Constitution as applied to him. (Doc. 257, p. 1, n.1.)[2] For the reasons that follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Johnson was charged with possession with intent to distribute cocaine, cocaine base, and marijuana in violation of 18 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S. § 924(c),

---

[1] Although his original motion moved for dismissal of Counts 3, 4, 6, and 7, Defendant expressly limits his challenge to Counts 4 and 7 based on recent changes in case law.

[2] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

1

and possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) on December 11, 2019. (Doc. 1.) Counts 1 through 4 relate to an incident that occurred on or about November 23, 2017, in Cumberland County, Pennsylvania and allege that Johnson possessed with intent to distribute both cocaine and marijuana and possessed four firearms in furtherance of a drug trafficking crime and as a prohibited person. (*Id.* at 1–4.) Counts 5 through 7 relate to an incident in Dauphin County, Pennsylvania, that occurred on or about August 17, 2018. (*Id.*)[3] Counts 5 through 7 allege Johnson possessed with intent to distribute cocaine base and one firearm in furtherance of a drug trafficking crime and as a prohibited person. (*Id.*)

    Johnson is alleged to have violated Section 922(g)(1) because he possessed various firearms, which were shipped and transported in interstate and foreign commerce, after he was previously convicted of at least one crime punishable by imprisonment for a term of more than one year. (Doc. 1.) The Government asserts that Johnson has underlying criminal convictions that disqualify him from possession of a firearm pursuant to Section 922(g)(1), including convictions for drug trafficking and possessing a firearm while drug trafficking. (Doc. 260, p. 25.)

---

[3] On July 15, 2021, the court granted Johnson's unopposed motion to sever Counts 1 through 4 from 5 through 7 for trial. (Docs. 45, 46.)

2

On October 6, 2023, Johnson filed a motion to dismiss the indictment based on the argument that the application of Section 922(g)(1) to him violates the Second Amendment. (Doc. 139.) On October 11, 2023, this court entered an order staying the resolution of the motion to dismiss pending the Third Circuit Court of Appeals' review of the consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023). (Doc. 143.)

While *Quailes* was pending, Johnson has had three trials on this indictment. The first trial on Counts 1 through 4 commenced on October 30, 2023. A mistrial was declared on November 3, 2023. (Doc. 161.) The second trial on Counts 1 through 4 commenced on June 24, 2025. A second mistrial was declared on June 28, 2024. (Doc. 206). The first trial on Counts 5 through 7 commenced on July 8, 2024. On July 11, 2024, a mistrial was declared on Count 5, Johnson was found not guilty of possessing a firearm in furtherance of drug trafficking on Count 6 and was found guilty of possessing a firearm as a prohibited person on Count 7. (Docs., 221, 222, 223.) After conviction on Count 7, the court ordered that it would rule on the instant motion relating to Count 7 as a post-trial motion and ordered that the motion would remain stayed pending resolution of *Quailes*. (Doc. 225.)

A presentence report regarding Count 7 was prepared and filed on October 25, 2024. (Doc. 231.) On February 25, 2025, following the Third Circuit's

decision in *Quailes*, the court directed the parties to confer and determine whether *Quailes* and *United States v. Moore*, 111 F. 4th 266 (3d Cir. 2024) applied to the facts of this case, namely, whether Johnson was serving a term of supervised release, probation, or parole for any state or federal criminal offense at the times when he is alleged to have committed the 922(g)(1) violations in this case. (Doc. 237.) The parties complied and notified the court that Johnson was not on state or federal probation, parole, or supervision at the time of the offenses alleged in the indictment. (Doc. 252.) Thereafter, the court directed the parties to submit supplemental briefs to address the impact of relevant decisions issued while Johnson's motion to dismiss was stayed. (Docs. 257, 261.)

This matter is currently listed for trial on Counts 1 through 4 on July 14, 2025, and for trial on Count 5 on July 28, 2025. (Doc. 249, 250.) Johnson has been released on conditions since his initial appearance on February 5, 2020. (Doc. 21.)

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). In his pretrial motion to dismiss, Johnson asserts an as-applied challenge to the constitutionality of Section 922(g)(1). (*See* Docs. 27, 28, 39, 72.) In order to resolve an as-applied challenge,

the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct.  *Spence v. Washington*, 418 U.S. 405, 414 (1974).

## DISCUSSION

### A. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Johnson

Johnson argues that Section 922(g)(1) imposes an unconstitutional infringement of his right to keep and bear arms under the Second Amendment because he is "one of the people," similar to the defendants in *Quailes* and *Moore*, and the Government cannot "show how Section 922(g)(1) has an historical analogue to stripping an individual with non-violent felony drug offenses of their Second Amendment protections."  (Doc. 257, pp. 6, 7.)  Johnson argues that when the court engages in a "dangerousness" analysis in an as-applied case, the court should look to the "individuals specific characteristics."  (*Id.* at 8)(citing *United States v. Williams*, 113 F.4th 637, 658 (8th Cir. 2024.)  Johnson urges the court to consider the verdict in the trial on count 5, in which "[t]he jury appeared to accept [Johnson's] reason[4] for possessing the weapon when it acquitted him of the Section 924(c) count."  (*Id.* at 8.)  Johnson concludes that his multiple drug tracking offenses and § 924(c) offense are not "traditionally 'violent' offenses" and asks the

---

[4] At trial, Johnson argued he "possessed a weapon for self-defense because he had been shot by an individual who was still free in his community."  (*Id.*)

5

court to "infer from this specific Defendant's characteristics that such carrying was in conjunction with his inherent right of self-defense." (*Id.* at 9.)

After reviewing the § 922(g) litigation landscape and how it has changed in recent years, the Government argues that § 922(g)(1) is constitutional as applied to Johnson due to his serious criminal convictions and his membership in a group of individuals deemed dangerous by the legislature. (Doc. 260, p. 23.) The Government argues that Johnson's felony convictions for drug trafficking and possessing firearms are serious and indicate that firearm possession by Johnson would pose a danger to himself or others. (*Id.* at 25.) The Government notes that drug trafficking and possessing a firearm while drug trafficking "are closely linked to dangerousness with firearms." (*Id.*) The Government stresses that Johnson is not similar to Bryan Range, and notes that "the defendant's criminal history shows a pattern of recidivism for serious and violent offenses, including drug trafficking and assault." (*Id.* at 27.) Johnson did not file a reply brief.

### B. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

### 1. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010). In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742). And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). To measure consistency with historical firearm regulations, the modern regulation must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court

7

explained that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30. And then, in *Rahimi*, the Court clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the appropriate analysis . . . [is] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court rejected the idea that the examination of historical analogues signals "a law trapped in amber." *Id.* at 691.

### 2. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the appeal filed in the *Range* case. This appeal has traveled a long procedural road to finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania, seeking a declaration that Section 922(g)(1) violates the Second Amendment as applied to him. Applying then-controlling Third Circuit precedent, *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948 F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020), the district court granted summary judgment to the Government. *Range v. Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021). Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*. A Circuit panel affirmed the district court decision, applying *Bruen* and concluding that the Government met its burden to show that Section 922(g)(1) reflects the Nation's historical tradition of firearm regulation. *Range v. Att'y Gen.*, 53 F.4th 262, 266 (3d Cir. 2022) (per curiam). Range petitioned for rehearing en banc, and the Circuit granted the petition and vacated the panel opinion. *Range v. Att'y Gen.*, 56 F.4th 992 (3d Cir. 2022). The en banc court reversed and remanded for the District Court to enter judgment in favor of Range, finding that Range remained one of "the people" protected by the Second Amendment and the Government did not show that the Nation has a longstanding history and tradition of disarming people like Range. *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range I*").

The Government filed a petition for writ of certiorari. While that petition was pending, the Supreme Court decided *Rahimi*. The Court then vacated *Range I* and remanded for further consideration. *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second en banc opinion following remand, the Third Circuit reached the same conclusions as in *Range I*. The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction. *Range II*, 124 F.4th at 226–28. The Circuit

next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'" *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17). The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden. *Id.* (quoting *Bruen*, 597 U.S. at 24). The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a). Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms. More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm. The record contains no evidence that Range poses a physical danger to others. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment. *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025). Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases."

10

*Id.* at 210–11.  First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors."  *Id.* at 210 (emphasis supplied).  Second, "whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding."  *Id.*  Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed."  *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232).  The *Pitsilides* decision makes clear that the "'Second Amendment's touchstone is dangerousness.'"  *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J., dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

    Ultimately, the Court remanded to the District Court for additional discovery probative "to the prevailing Second Amendment analysis, including whether

Pitsilides poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament. As *Range II* illustrated, consideration of intervening conduct plays a crucial role in determining whether application of § 922(g)(1) is constitutional under the Second Amendment. *See* 124 F.4th at 232. Indeed, such conduct may be highly probative of whether an individual likely poses an increased risk of "physical danger to others" if armed. *Id.*

*Id.* at 212. That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110 F.4th at 1128.) Further, the Court observed that "both history and common sense reflect that this 'dangerousness' includes not only direct involvement in physical violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing. *Id.* at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659). This assessment "necessarily requires individualized factual findings." *Id*.

The Third Circuit has issued two non-precedential decisions in criminal cases following the decisions in *Range II* that provide additional guidance relevant to this matter. In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d

Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court rejected the Second Amendment challenge to Section 922(g)(1) because White's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate that he 'present[s] a special danger of misus[ing firearms],' and would likely pose an increased risk of 'physical danger to others' if armed." 2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). Looking at White's entire criminal history, the Court concluded that his convictions, considered collectively, show that White would pose a danger to others if armed because his prior criminal activities could lead to violent confrontation. *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that legislatures may disarm those convicted of crimes like drug dealing because such crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025), the Court concluded that the District Court did not commit plain error in rejecting Williams' Second Amendment challenge. That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment. *Id.* Given Williams' "dramatically different criminal

13

record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction. *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1). In *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the Third Circuit held that "[a] convict completing his sentence on [federal] supervised release does not have a Second Amendment right to possess a firearm." And, in *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*, No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to individuals on state parole or probation. However, this precedent is not controlling in this case because the defendant was not on any form of supervision at the time of the alleged offense conduct.

### C. Application of Relevant Precedent to Defendant's Second Amendment Challenge

#### 1. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to Johnson and his proposed conduct. *See Bruen*, 597 U.S. at 31–33; *Range II*, 124 F.4th at 225; *Pitsilides*, 128 F.4th at 209. Here, it does not appear that the Government challenges whether the text of the Second Amendment applies to Johnson, considering it does not address this question, but rather, begins its

analysis with historical analogs.  (Doc. 260, p. 9.)   Rightfully so, based on the controlling precedent in *Range II* concluding that an individual who has a felony conviction remains among "the people."  *See Range II*, 124 F.4th at 228.

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228.  The Court then stated: "It does."  *Id.*  In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year.  18 U.S.C. § 922(1).  The statute criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons.  And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to him, the Circuit did not address the first *Bruen* question at all, and only addressed the second *Bruen* question.  2025 WL 384112 at *2.  Since *Bruen* instructs that the second step of conducting a historical tradition analysis is only necessary when the person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this may suggest that the Circuit has determined that the first *Bruen* question did not require further discussion in the context of a Second Amendment challenge to

Section 922(g)(1). On the other hand, it may suggest that when a defendant's challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step. In any event, the court concludes that the text of the Second Amendment applied to Johnson and his conduct.

### 2. *Bruen* Step Two Analysis

Having determined that Johnson and his conduct are covered by the Second Amendment and presumptively protected, the court must next determine "whether the Government can strip him of his right to keep and bear arms" by analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'" *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*. As detailed previously, the court will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." *Pitsilides*, 128 F. 4th at 212. That is because an

individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding. The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others. *See Range II*, 124 F.4th at 232. In assessing whether the criminal record and available background information about the defendant in this case lead to the conclusion that the defendant is, in fact, sufficiently dangerous so that the application of Section 922(g)(1) to him is consistent with the Second Amendment, the court will view Bryan Range as one data point on the dangerousness spectrum, specifically, on the far end of non-dangerousness.

The Government contends that applying Section 922(g)(1) to Johnson is constitutional because "[t]he defendant's felony convictions for drug trafficking and possessing firearms while drug trafficking are serious and indicate that his firearm possession would pose a danger to himself or others." (Doc. 260, p. 25.) The Government underscores the dangerousness of felony drug trafficking and possessing firearms while drug trafficking crimes. (*Id.*) While the Government does not provide Johnson's criminal history, the presentence report in this case indicates a lengthy criminal history with offenses ranging from theft, disorderly conduct, and driving under the influence, to distribution of controlled substances and unlawful possession of firearms. (Doc. 231, ¶¶ 28–39.)

Johnson maintains that permanent disarmament through application of Section 922(g)(1) as applied to him is unconstitutional because his prior convictions are all non-violent and the Government has not met its burden of showing the Nation's historical tradition of permanently disarming a person with only non-violent prior felony convictions. (Doc. 257, pp. 7–9.)

Having considered both parties' arguments, the court concludes that Johnson's prior convictions for felony drug trafficking and unlawful firearm possession demonstrate that Johnson presents a danger of misusing firearms and would likely pose an increased risk of physical danger to others if permitted to be armed. *See White*, 2025 WL 384112 at *2 (holding that defendant's prior criminal

convictions for possession with intent to distribute controlled substances, aggravated assault, and carrying an unlicensed firearm "shows that he would pose such a danger to others if armed because those activities could lead to violent confrontation"); *Williams*, 113 F.4th at 663 (holding that a person convicted of a crime is dangerous and can be disarmed if he has committed, among others, "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"); *Williams*, 2025 WL 1341877 at *2 (holding that prior convictions for possession with intent to distribute cocaine and marijuana and child endangerment constitute a "dramatically different criminal record" than Bryan Range for purposes of Second Amendment analysis); *Mollett*, 2025 WL 564885 at *7 (holding that three prior convictions for drug trafficking less than two years prior to the Section 922(g)(1) offense support the conclusion that defendant presented a special danger of misusing firearms and was subject to disarmament). Defendant's other prior convictions–though not necessarily sufficient individually to establish the requisite degree of dangerousness–when considered in combination with the drug trafficking and firearm convictions, demonstrate Johnson's historical involvement in dangerous and recidivist criminal conduct.

 Based on this comprehensive review of Johnson's criminal record, it is clear that Johnson presents a far greater risk of dangerousness than Bryan Range if

19

permitted to be armed. Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Johnson.

## CONCLUSION

For the foregoing reasons, Johnson's motion to dismiss the indictment, Doc. 139, will be denied. An implementing order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 2, 2025